FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 JUN 29 P 6: 01

CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AISHA I. J. DIALLO

    Plaintiff

v.      Civil No. **16-1312**

SUNTRUST BANK FOUNDATION
AND ENDOWMENTS
    Defendant

## MEMORANDUM OPINION

*Pro se* Plaintiff Aisha Diallo has filed a lawsuit against Suntrust Bank Foundation and Endowments ("Suntrust"), the Trustee of a charitable remainder trust ("the Trust") of which Ms. Diallo is a beneficiary. She has alleged that Suntrust "embezzled" funds from the corpus of the Trust, improperly administered the assets of the Trust, and opened certain unauthorized offshore accounts in her name. *See* ECF No. 1. The Court construes these claims as allegations of (1) common law conversion, (2) breach of the duty to administer the trust, in violation of D.C. Code Ann. § 19-1308.01, and (2) breach of the duty of loyalty, in violation of D.C. Code Ann. § 19-1308.02.

Suntrust Bank has filed a Motion to Dismiss the Complaint, ECF No. 5, and a Request for Attorney's Fees. ECF No. 9. For the reasons that follow, the Court **GRANTS WITHOUT PREJUDICE** the Motion to Dismiss and **GRANTS** Suntrust's Fee Petition, subject to reconsideration if an appropriate and timely motion is filed by any private attorney Plaintiff may engage on her behalf within the next forty-five (45) days.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Diallo is the lifetime beneficiary of a Trust, which was established by Mary Parker Porter, Ms. Diallo's former employer, which took effect upon Mrs. Porter's death in August 1990. ECF No. 1 at 6. The Trust was initially funded with $150,000 from Mrs. Porter's estate. Per the terms of the Trust, five percent of the fair market value of the assets of the Trust, as calculated on the first day of each taxable year, is to be disbursed to Ms. Diallo quarterly in four equal segments. ECF No. 5 at 2. There is no dispute that Ms. Diallo has received quarterly payments since the Trust went into effect.

NationsBank, the original Trustee of the Trust, resigned in December 1995, at which point Crestar Bank (now SunTrust Bank) was appointed Trustee by the Superior Court of the District of Columbia. Id.

Ms. Diallo admits that on occasion she has asked Suntrust to give her advances and loans from the Trust, which she concedes would be contrary to the terms set forth in Mrs. Porter's will. ECF No. 8 at 3.

On May 3, 2016, Ms. Diallo filed a Complaint in this Court, alleging primarily that Suntrust had "embezzled" from the corpus of the Trust, noting that the corpus had only grown from $150,000 to $174,332.69 over the course of its 27 year existence. ECF No. 1. She submits that her suspicions of malfeasance were first piqued "four years ago." ECF No. 1 at 6.

Suntrust responded with a Motion to Dismiss the Complaint ("Motion to Dismiss"), arguing that Ms. Diallo had failed to state a claim. ECF No. 5. Ms. Diallo did not formally respond to the Motion to Dismiss, but instead sent three letters – two to the Court and one to the

Clerk of the Court (none of which were sent to defense counsel) – repeating some of the allegations of the Complaint, but adding that she believed that Suntrust had also opened an offshore account in her name without her knowledge or consent. ECF No. 7, ECF No. 8 at 2, ECF No. 10 at 1. These letters were docketed by the Clerk of the Court, as a result of which Suntrust had access to them.

Subsequently, Suntrust filed a Request for Attorney's Fees on August 11, 2016 ("Fee Petition"). ECF No. 9.

In view of the apparent modest circumstances of Ms. Diallo and the undue burden that retaining counsel would impose on her, the Court took what it believed was an appropriately informal approach to the case. By Memorandum Order dated March 8, 2017, it directed Suntrust to provide the Court and Ms. Diallo with certain information regarding the Trust, including the documents that established the Trust, full accountings of the Trust activity for the last five years, and any information or documents Suntrust might possess with respect to an offshore account that may have been opened in Ms. Diallo's name. ECF No. 13. Because "private information [was] contained in this material," ECF No. 13 at 2, the Court permitted Suntrust to mail the materials directly to the Court, rather than file them on the electronic docket. On March 29, 2016, Suntrust sent the requested materials to both the Court and to Ms. Diallo.

The Court then undertook to review the papers in some detail and, by letter dated April 13, 2017, directed its law clerk to advise the parties that the Court "ha[d] not found anything problematic in the records." ECF No. 16. In any event, the parties were asked if they would consent to continuing the proceedings, and possibly pursue settlement discussions, before a

3

magistrate judge. ECF No. 16. Suntrust responded to that letter on April 25, 2017, declining to consent to referral to a magistrate judge.

Accordingly, on May 2, 2017 the Court issued a Memorandum, informing Suntrust that it considered the briefing on its Motion to Dismiss to be complete, but providing Ms. Diallo with twenty additional days if she wished to file a supplemental response. ECF No. 18. The Court also asked counsel for Suntrust to submit supplemental materials in support of his Fee Petition. *Id.* Suntrust filed supplemental materials on May 17, 2017. ECF No. 20. On June 14, 2017, Ms. Diallo sent the Court correspondence asking that attorney's fees not be awarded to Suntrust. ECF No. 21.

## II. MOTION TO DISMISS

In order to consider the merits of the Motion to Dismiss, the Court is obliged to decide two preliminary matters: (1) which jurisdiction's laws should apply, and (2) what causes of action Ms. Diallo was alleging under that law.[1]

The Court finds that District of Columbia law applies to this case.[2] "[A] federal court sitting in diversity applies the choice-of-law rules of the state in which it sits" and, in tort cases such as this, "Maryland adheres to *the lex loci delicti* rule." *Williams v. Gyrus ACMI, Inc.*, 790 F.

---

[1] The Court has also considered whether it has subject matter jurisdiction over this case because it has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Martin v. Martin,* No. CV ELH-16-1732, 2016 WL 3362662, at *2 (D. Md. June 16, 2016)(quoting *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010)).

This case is before the Court based on diversity jurisdiction. The parties appear to be diverse – Ms. Diallo is a resident of Glenndale, Maryland, ECF No. 1 at 2, and Suntrust Bank has its principal place of business in Atlanta, Georgia and is incorporated in Georgia, *see Brown v. SunTrust Banks, Inc.,* 66 F. Supp. 3d 81, 83 (D.D.C. 2014),. The Court also finds that the amount in controversy requirement has been met. The Court believes that if Ms. Diallo's allegations were true, her loss may have reached the $75,000 threshold and dismissal would not be justified merely because it was not "a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

[2] Suntrust assumes without analysis, that Maryland law applies to this case.

4

Supp. 2d 410, 414 (D. Md. 2011). Since the Trust was settled in the District of Columbia, that means the alleged acts or omissions that underlie the causes of action occurred there. Hence, District of Columbia law applies.

It is not entirely clear from Ms. Diallo's Complaint exactly what causes of action she is attempting to assert. Ms. Diallo avers that Suntrust both "embezzled" from the Trust and transferred some of its funds into an offshore account. Embezzlement, however, is a criminal, not a civil cause of action under District of Columbia law. The Court therefore construes Ms. Diallo's claim as the civil cause of action most closely analogous to the crime of embezzlement, *viz.* the tort of conversion. The Court does this because *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But whereas *pro se* complaints ordinarily merit special care to determine whether any possible set of facts would entitle the plaintiff to relief, *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980), they are not automatically assumed to be valid and if they may nonetheless be dismissed.

Ms. Diallo also avers that Suntrust failed to properly manage the investments of the Trust. Although she does not state this in the form of a cognizable cause of action, it amounts to an assertion of breach of duty to competently administer the Trust, in violation of D.C. Code Ann. § 19-1308.01, and, possibly breach of the duty of loyalty, in violation of D.C. Code Ann. § 19-1308.02 ("Breach of Duty claims").

Against this background, the Court considers the merits of the Motion to Dismiss.

A party may move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), where a complaint fails to state facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss." *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002).

For the reasons that follow, the Court **GRANTS WITHOUT PREJUDICE** the Motion to Dismiss in its entirety.

*1. Conversion; Statute of Limitations*

Under District of Columbia law, to support a claim of conversion, a plaintiff must demonstrate "'(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto.'" *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 258 (D.D.C. 2015)(quoting *Johnson v. McCool,* 808 F.Supp.2d 304, 308 (D.D.C. 2011). Money can be the subject of a conversion claim if "the plaintiff has the right to a specific identifiable fund of money." *Id.* (internal citations omitted). "The statute of limitations governing an action for conversion is three years." *Forte v. Goldstein*, 461 A.2d 469, 472 (D.C. 1983)(citing D.C. Code § 12–301 (1973)).

Ms. Diallo states in her Complaint "[f]our years ago I suspected that those who are responsible for my trust have been embezzling my income." ECF No. 1 at 6. As proof, she asks only "how can $150,000.00 since 1989 be to this day $174,332.69 only why why why[?]" ECF No. 1 at 6, and "I just believe that they have been using my income for their own benefits and I have been expecting that the $150,000.00 should have been doubled by now." *Id* at 7. With

6

respect to the purported offshore account opened in her name without her authorization, Ms. Diallo writes that the Suntrust's agent "sent me some forms to fill out which I didn't, because I knew something was fishy about it which proved to be right when I went to talk to one of the Suntrust manager's [sic] on Connecticut ave [sic], who told me forms like that is [sic] only given for off shore accounts." ECF No. 8 at 2.

Based on its close review of the quarterly statements of the Trust for the last five years which Suntrust furnished at the Court's request, the Court has detected no suggestion of conversion. All the money expected to be in the Trust is accounted for in the detailed statements, which provide transparent descriptions of the Trust's annual gains and losses. Counsel for Suntrust has also represented to the Court the "there is [no] 'offshore account' that the Trustee opened in Ms. Diallo's name." Letter from Bradford S. Bernstein, Counsel, Suntrust to Judge Peter J. Messitte (Mar. 29, 2017)(on file with the Court). Ms. Diallo herself appears to have conceded as much in correspondence to the Court after she reviewed the records, writing, "[m]y complaints was [sic] from 10-12 years ago but they only gave you information for 5 years . . ." ECF No. 21 at 1. However, even if Ms. Diallo's claims stemming from events from a decade or more past were not time limited – which they are – the evidence before the Court belies any suggestion of wrongdoing on Suntrust's part. But, the fact is, as Ms. Diallo apparently is not aware, there is a statute of limitations for bringing civil court actions, being three (3) years from either the fact of the alleged misdeed or three years from when a party challenging the purported misdeed knows or should have known of the alleged misdeed. *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 442, 749 A.2d 796, 800 (2000). Action based on happenings 10-12 years ago are clearly time-barred. So are actions that Ms. Diallo may have suspected four years ago.

7

*2. Breach of Duty to Administer Trust Competently and Loyally*

Under District of Columbia law, a trustee has the highest duty of loyalty to the beneficiaries of a trust that it administers, *Reardon v. Riggs Nat. Bank*, 677 A.2d 1032, 1035 (D.C. 1996); and must administer the trust competently and in good faith. D.C. Code § 19-1308.02. The trustee is the beneficiary's fiduciary. *Cabaniss v. Cabaniss*, 464 A.2d 87, 91 (D.C. 1983). As such, the trustee must "keep adequate records of the administration of the trust," D.C. Code Ann. § 19-1308.10, and make the trust productive. *Cobell v. Norton*, 283 F. Supp. 2d 66, 271 (D.D.C. 2003), *vacated in part*, 392 F.3d 461 (D.C. Cir. 2004)(quoting Restatement (Second) of Trusts § 179 (1959)). "A trustee shall administer the trust solely in the interests of the beneficiaries." D.C. Code Ann. § 19-1308.02.

Ms. Diallo's only evidence that the trust was "mismanaged" is that the value of the corpus has only increased by approximately $24,000 over the course of twenty-seven years. Standing alone, this may seem suspicious. But the Court's examination of the Trust's accounting reveals that it was managed very conservatively, yet nevertheless productively, given the fluctuating stock market over the period of time. Thus the twenty quarterly statements for the Trust over the past five years that Suntrust provided for 2012-2016 reveal an income yield at a market rate that has ranged between 1.43 percent (2013 Q4) and 2.25 percent (2013 Q1). More importantly, Ms. Diallo has failed to take into account that for some 27 years she has been paid 5 percent of the net value of the trust assets in each of the 27 years. The average annual payments she received over the last five years have been $8,628.95 which, assuming they are more or less consistent with previous years, indicate that, over 27 years, more than $230,000 has been drawn down from the Trust – in favor of Ms. Diallo herself. In sum, there is really no basis to conclude

8

that in managing the Trust, Suntrust has committed a breach of a duty to administer the trust competently and loyally.

Given Ms. Diallo's mere suspicions and surmise and the essentially straightforward documents provided by Suntrust, the Court is satisfied that its grant of Suntrust's Motion to Dismiss is in order.

### III. FEE PETITION

For having to provide documents and file pleadings in this case, Bradford S. Bernstein, Esquire, counsel for Suntrust, has requested attorneys fees on behalf of his law firm, Miles & Stockbridge, P.C. District of Columbia law provides that a trustee may "[p]rosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect . . . the trustee in the performance of the trustee's duties. D.C. Code Ann. § 19-1308.16 ¶ 11 at ¶ 24. The D.C. Code further permits that "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorneys fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." D.C. Code Ann. § 19-1310.04. Attorney Bernstein, as appropriate, requests that the attorneys fees come from the Trust.

The Court finds that counsel is seeking a reasonable fee for a reasonable number of hours of work undertaken. To be clear: Ms. Diallo is not being asked to pay that amount, the Trust is. This, too, is something Ms. Diallo apparently does not understand.

However, earnestly she may believe that Suntrust and its predecessors have engaged in wrongdoing, she has made very serious allegations, going directly to the integrity and reputation of the institution. Suntrust has every right to defend itself against such allegations. And it is entirely proper that Suntrust has engaged counsel to do so. An attorney who defends a trustee in

a legal proceeding is not obliged to work for free when performing appropriate services for the trustee. Ms. Diallo may have brought her case without knowing this, but that in no way means that the attorneys for the Trust do not merit compensation.

Per Appendix B to the Local Rules of this Court, which applies to a case such as this, "in which a prevailing party would be entitled, by applicable law or contract, to reasonable attorneys fees based on a set of criteria including hours and rates," the Court finds that Attorney Bernstein is entitled to a fee of $300-$475 per hour because he has been a member of the bar for 19.5 years. Since he only requests payment at a rate of $315 per hour, his request is reasonable.

A review of his bills also demonstrates that he has worked expeditiously for a reasonable number of hours. He asks for $5,764.50 in attorneys fees for 18.3 hours of work. More specifically, Attorney Bernstein requests (1) $1701.00 for 5.4 hours of work on case development, (2) $315.00 for one hour of work on pleadings, (3) $535.50 for 1.7 hours of work on written discovery, (4) $1,638.00 for 5.2 hours of motions practice, and (5) $1,575.00 for 5 hours of work in preparing the fee petition. He is the only attorney to have worked on the case.

The Court **GRANTS** the Fee Petition and awards Bernstein and his firm $5,764.50 in attorneys fees.

## IV. CONCLUSION

Having said this, the Court is still willing to give Ms. Diallo the opportunity to pursue her claims, if she really believes she has valid claims and if she is prepared to engage her own attorney to do so. The fee of such attorney, of course, would be something she would have to bear herself.

From the court's view of the case, this is not one that calls for the appointment of an attorney to provide services to her pro bono.

But Ms. Diallo should understand that, if she does choose to engage an attorney to pursue her claim, Suntrust will be entitled to continue to employ counsel to defend it as before. That, quite possibly, would further draw down the net value of the corpus of the Trust, which in turn could eventually reduce the value of the 5 percent annual payment Ms. Diallo receives.

The Court believes it has given Ms. Diallo fair consideration of her claims without the need for extended or further proceedings. To repeat: Ms. Diallo needs to understand that such suspicions as she has acted upon must be based on substantial proof (which is not the case here) and that, if she litigates as she has chosen to do here, there are consequences, even if she has acted in good faith.

Per the accompanying Order, Ms. Diallo shall have forty-five (45) days to engage her own attorney who may file a Motion to Reconsider the Court's decision. The Court will review such a Motion, if filed, but with no assurance that it will be granted.

Payment of Suntrust's attorneys fees may be made no sooner than ninety (90) days from the date of the accompanying Order, in order to give any private counsel who might be engaged by Ms. Diallo time to file a Motion to Reconsider.

A separate order with **ISSUE.**

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

June 29, 2017

11